IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JULIE A. HERRON,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C13-2060

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.   *INTRODUCTION* .................................................. 2

II.  *PRINCIPLES OF REVIEW* ........................................ 2

III. *FACTS* ............................................................ 4
    A.    *Herron's Education and Employment Background* ............. 4
    B.    *Vocational Expert's Testimony at the Administrative Hearing* ...... 4
    C.    *Herron's Medical History* ................................... 4

IV. *CONCLUSIONS OF LAW* .......................................... 7
    A.    *ALJ's Disability Determination* ............................. 7
    B.    *Objection Raised By Claimant* .............................. 10

V.   *CONCLUSION* .................................................. 13

VI. *ORDER* ......................................................... 13

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Julie A. Herron on August 21, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her Title II disability insurance benefits. Herron asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Herron requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's

conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Herron's Education and Employment Background

Herron was born in 1971. She did not graduate from high school, but later earned a GED. She also earned an "office specialist" diploma, but she testified that it took her four years to complete the one-and-one-half year program due to her mental impairments. In the past, Herron worked as a secretary and telemarketer.

### B. Vocational Expert's Testimony at the Administrative Hearing

At the administrative hearing, the ALJ provided vocational expert Marian Jacobs with a hypothetical for a person who is:

> limited to light work, occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, crawling; never climbing ladder, rope, scaffold; avoid even moderate exposures to fumes, odors, dust, gases, poor ventilation, et cetera, hazards such as machinery and heights; limited to simple, repetitive, routine tasks; occasional interaction with supervisors, coworkers, and the public.

(Administrative Record at 57.) The vocational expert testified that under such limitations, Herron could not perform her past relevant work, but could perform the following jobs: (1) addresser and sorter of envelopes and packages (240 positions in Iowa and 24,000 positions in the nation), (2) assembler of buttons and notions (500 positions in Iowa and 27,000 positions in the nation), (3) router (1,400 positions in Iowa and 142,000 positions in the nation), and (4) library shelving clerk (2,400 positions in Iowa and 209,000 positions in the nation).

### C. Herron's Medical History

On June 14, 2010, Dr. Philip Laughlin, Ph.D., reviewed Herron's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review

4

Technique and mental residual functional capacity ("RFC") assessment for Herron. Dr. Laughlin diagnosed Herron with major depressive disorder versus bipolar disorder, generalized anxiety disorder, panic disorder, PTSD, mixed personality disorder, and alcohol and drug problems. Dr. Laughlin determined that Herron had the following limitations: moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Laughlin determined that Herron was moderately limited in her ability to: maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. Dr. Laughlin concluded that:

> [Herron] appears able to sustain sufficient concentration and attention to perform a range of non-complex, repetitive and routine cognitive activity when she is motivated to do so. [She] appears able to sustain short lived, superficial interaction with others and possesses adequate expressive and receptive language skills.

(Administrative Record at 381.)

On September 16, 2010, Dr. Jan Hunter, D.O., reviewed Herron's medical records and provided DDS with a physical RFC assessment for Herron. Dr. Hunter determined that Herron could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Hunter also determined that Herron could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Additionally, Dr. Hunter found that Herron should avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation, and hazards such as machinery and heights. Dr. Hunter found no manipulative, visual, or communicative limitations.

On November 17, 2010, Dr. Marvin F. Piburn, Jr., M.D., Herron's treating psychiatrist, and Joyce Andresen, LISW, Herron's treating counselor, provided a letter to DDS concerning Herron's mental health problems. Dr. Piburn and Andresen diagnosed Herron with bipolar disorder, and complex anxiety involving generalized anxiety, panic attacks, agoraphobia, social anxiety, and PTSD. Dr. Piburn and Andresen also noted that Herron suffered from alcohol dependence in short term remission, and polysubstance dependence in long term remission. Dr. Piburn and Andresen concluded that:

> [Herron] has a hard time coping with day to day activity. She is easily overwhelmed and reports having problems with her short term memory. She is currently unable to work and her inability to cope with daily stress, will prevent her from holding a job in the future.

(Administrative Record at 435.)

On March 13, 2012, at the request of Herron's attorney, Dr. Piburn filled out "Mental Impairment Interrogatories" for Herron. Dr. Piburn diagnosed Herron with bipolar disorder, generalized anxiety, panic attacks with agoraphobia, social anxiety, PTSD, personality disorder, alcohol dependence in remission, and polysubstance

6

dependence in remission. Dr. Piburn noted the following signs and symptoms of Herron's impairments: sleep disturbance, mood disturbance, emotional liability, recurrent panic attacks, feelings of guilt and worthlessness, difficulty thinking and concentrating, social withdrawal and isolation, manic syndrome, and generalized persistent anxiety. Dr. Piburn opined that Herron's prognosis was "poor," and stated that Herron is "chronically mentally ill." Dr. Piburn further opined that Herron would miss work more than three times per month due to her impairments or treatment for her impairments. Dr. Piburn found that Herron had marked limitations in the ability to: remember locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, maintain regular attendance, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday or a normal workweek, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Piburn concluded that Herron would have extreme limitations in the ability to travel in unfamiliar places, use public transportation, and set realistic goals or make plans independently of others. Dr. Piburn determined that Herron had the following functional limitations: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Herron is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42

(1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant

8

work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Herron had not engaged in substantial gainful activity during the period from her alleged onset date of January 3, 2010 through her date last insured of June 30, 2010.[1] At the second step, the ALJ concluded from the medical evidence that Herron had the following severe impairments: major depressive disorder versus bipolar disorder; generalized, panic, social, and PTSD anxiety disorders; mixed personality disorder; alcohol abuse and polysubstance dependence; degenerative disc disease of the lumbosacral spine; asthma; and

---

[1] *See* 20 C.F.R. § 404.130 (providing the requirements for disability insured status under Title II). In order to be entitled to disability insurance benefits under Title II, a claimant must show that he or she was disabled prior to the expiration of his or her disability insured status date. In this case, Herron's disability insured status expired on June 30, 2010. Therefore, in order for Herron to be entitled to disability insurance benefits she must be found to be disabled between Januay 3, 2010, her disability onset date, and June 30, 2010, the date her disability insured status expired. Both parties agree that this is the time period necessary for finding disability. *See* Herron's Brief (docket number 14) at 3, n.1 and Commissioner's Brief (docket number 15) at 3, n.2.

irritable bowel syndrome. At the third step, the ALJ found that Herron did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Herron's RFC as follows:

> [Herron] had the residual functional capacity to perform sedentary work . . . except she was limited to: occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, and scaffolds; and needing to avoid even moderate exposure to hazards (machinery, heights), fumes, odors, dust, gases, and poor ventilation. She was further limited to: simple, routine, repetitive tasks; no close attention to detail; and occasional interaction with supervisors, coworkers, and the public.

(Administrative Record at 14-15.) Also at the fourth step, the ALJ determined that Herron was unable to perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, Herron could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Herron was not disabled.

### B. Objection Raised By Claimant

Herron argues that the ALJ failed to properly evaluate the opinions of her treating psychiatrist, Dr. Piburn. Herron maintains that the ALJ's reasons for discounting Dr. Piburn's opinions are not supported by substantial evidence in the record. Herron concludes that this matter should be remanded for further consideration of Dr. Piburn's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th

Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision

must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR 96-2P, 1996 WL 374188 (1996).

In his decision, the ALJ thoroughly reviewed Dr. Piburn's opinions.[2] Upon review of such opinions, the ALJ weighed Dr. Piburn's opinions as follows:

> The undersigned gives little weight to [Dr. Piburn's] opinions. They are not supported by their own treatment records which reflect psychiatric appointments some every two to three months and management of symptoms with medications and sporadic attendance at therapy appointments, except for two brief voluntary hospitalizations for suicidal thoughts/statements and a brief voluntary hospitalization for cocaine detoxification. The opinions are also not supported by the other medical evidence of record. The opinions are also not consistent with [Herron's] reported broad range of activities of daily living which included providing most of the care for a toddler grandchild.

(Administrative Record at 17.)

Having reviewed the entire record, the Court finds that the ALJ properly considered, weighed, and addressed the opinion evidence provided by Dr. Piburn. The Court also finds that the ALJ provided "good reasons" for the weight given to Dr. Piburn's opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

---

[2] *See* Administrative Record at 17 (providing a thorough review of Dr. Piburn's opinions).

## V. CONCLUSION

The Court finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Dr. Piburn. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 18th day of August, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA